IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Frederick Fortner, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:09-cv-03060-RMG |
| | ) |
| v. | ) ORDER |
| | ) |
| Roper Saint Francis Hospital, | ) |
| | ) |
| Defendant. | ) |

This action arises under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et. seq.*,[1] and involves a claim of racial discrimination in the discharge of Plaintiff from his position as a Coordinator in the Engineering Department of Defendant Roper Saint Francis Hospital. Plaintiff further asserts a state law claim for alleged interference with Plaintiff's contractual relationship with a subsequent employer. Defendant has moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that there exists no material dispute as to any material fact and that it is entitled to judgment as a matter of law. The matter was initially referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(B) and Local Rule 73.02(B)(2) for pre-trial matters. The Magistrate Judge submitted a Report and Recommendation on December 17, 2010 recommending granting of the Defendant's motion for summary judgment on the Title VII claim and dismissing the supplemental state law claim. (Dkt. Entry 28). For reasons set forth below, the Court

---

[1] Plaintiff states in his Complaint that he asserts a Title VII complaint and complied with all pre-litigation requirements under the Act. The Complaint, however, identifies Title VII as 42 U.S.C. § 1981. The Court has treated the statutory reference as a scrivener's error and has addressed this claim under 42 U.S.C. § 2000e *et. seq.*

Page 1 of 9

denies the Defendant's motion for summary judgment under the Title VII claim and grants the motion for summary judgment regarding the state law interference with contract claim.

## BACKGROUND

Plaintiff, who is African American, was hired as a Coordinator in the Defendant's Engineering Department on September 6, 2005 and was terminated on October 4, 2007. Plaintiff was one of two Coordinators in the Engineering Department and was principally responsible for the Hospital's physical plant. The other Coordinator was primarily responsible for the Hospital's building maintenance. Among Plaintiff's duties included the supervision of the Hospital's backup electrical generators and the periodic tests to confirm that the generators were operational.

The record is undisputed that Plaintiff was recruited for his position by his future supervisor, David Provenzano, the Defendant's Director of Engineering, who had worked with Plaintiff in the Coast Guard. (Dkt. Entry 17-2 at 11-12). The record also shows that Plaintiff's 2005 and 2006 annual performance evaluations were "meets expectations" or better, with praise for the quality of his work. (Dkt. Entry 17-5 at 24-26, 46-48). In mid-2007 onward, Defendant, through Mr. Provenzano, began documenting concerns regarding Plaintiff's performance, primarily focused on the failure to conduct required periodic tests on the Hospital's backup electrical generators. (Dkt. Entry 17-4 at 47; 17-5 at 29).

As part of ongoing regulatory and accreditation requirements, Defendant was mandated to conducted essentially monthly tests to confirm the reliability of the backup electrical generators, which can play a critical role should the Hospital suddenly lose electrical power. (Dkt. Entry 17-3 at 7-9). These testing standards generally require that the generators be operated for at least 30 minutes at 30% of their capacity. (Dkt. Entry 17-3 at 12-17).

Plaintiff was summoned to a meeting with Mr. Provenzano on July 18, 2007 and advised that the generator test runs for June 2007 were unsatisfactory. (Dkt. Entry 17-5 at 27). Records submitted by Defendant indicated that test runs for some other months were also unsatisfactory but it appears that the July 18, 2007 employee conference was the first occasion this matter was brought to Plaintiff's attention. (Dkt. Entry 17-5 at 31-34). Plaintiff was warned in his July 18, 2007 conference that a "failure to improve can result in and including suspension or termination." (Dkt. Entry 17-5 at 27). Test runs subsequently conducted in July, August and September failed to meet the time and/or load requirements. (Dkt. Entry 17-5 at 31-34). Defendant terminated Plaintiff on October 4, 2007 because he had "failed to properly supervise required monthly generator test runs . . . " (Dkt. Entry 17-5 at 29).

Plaintiff does not challenge the allegation that the test runs conducted did not meet the 30 minute/ 30% test load standards but asserts that various circumstances outside his control produced this result. Plaintiff provides the following explanations for failure to achieve the test run standards:

1. The data produced from the test runs did not provide the percentage of generator capacity and this information was produced through a computer program under the control of Mr. Provenzano. Plaintiff asserted that there was a delay in providing him the computer generated data, which prevented him from rerunning the tests within the required time frame to achieve the desired capacity. (Dkt. Entry 17-3 at 34, 36-7 and 17-5 at 37). Defendant disputes this explanation and asserts the capacity could be calculated manually based upon data on meters available on each of the Hospital's four generators. (Dkt. Entry 17-1 at 7-9; 17-5 at 42; 25 at 3-4 ).

2. Plaintiff asserts that numerous test runs were interrupted or prevented due to hospital demands, such as longer than expected use of the operating rooms. (17-3 at 33). Plaintiff asserts that

he informed Mr. Provenzano of these problems. (Dkt. Entry 17-3 at 32, 36, 40). Defendant disputes this explanation of Plaintiff.

3. Plaintiff asserts that the demands of contractors operating in the Hospital in various construction projects disrupted his generator tests and/or made them very difficult to accomplish. (17-3 at 40,41; 17-4 at 47, 48; 17-5 at 37; 20-22 at 2). Defendant disputes this explanation of Plaintiff.

4. Plaintiff asserts that he had inadequate staff to support all of his responsibilities and his supervisor failed to provide him additional staff, as requested, to address this problem. (Dkt. Entry 17-4 at 48; 17-5 at 37). Defendant denies these claims and contends at least some of the staffing problems of Plaintiff related to retention of employees dissatisfied with his leadership. (Dkt. Entry 17-1 at 9-11; 17-5 at 43; 20-29 at 5).

5. Plaintiff asserts that continuing problems with the generators required repairs and contributed to the deficiencies in the test runs. This claim was corroborated by another employee in the Engineering Department, Ms. Smalls.[2] (Dkt. Entry 17-3 at 20-21; 17-5 at 37; 20-26 at 2; 39-1 at 57).

6. Plaintiff has alleged that others have also experienced difficulties in meeting the test run standards for the back up generators. These include claims that the other Coordinator, who is Caucasian, failed to meet the standards when he was supervising the generator tests while Plaintiff

---

[2] Plaintiff submitted a signed statement by Ms. Smalls that was not sworn or notarized and did not otherwise satisfy the requirements for an unsworn statement provided under 28 U.S.C. § 1746. (Dkt. Entry 20-26). However, Ms. Smalls was deposed by the Defendant, reviewed the signed statement with defense counsel in the course of the deposition and affirmed it was "the events I could recall." (Dkt. Entry 39-1 at 48). The Court finds that Ms. Small's affirmation under oath in her deposition of the accuracy of the signed statement is sufficient to satisfy the requirements of a sworn statement.

was on vacation, and that the Hospital has allegedly continued to have problems meeting the standards since Plaintiff was terminated. (Dkt. Entry 20-22 at 2; 20-26 at 2; 39-1 at 57). No reported adverse action has been taken against any Caucasian employee responsible for these allegedly unsuccessful test runs, including Plaintiff's successor, Mr. Gunter, or Plaintiff's and Mr. Gunter's supervisor, Mr. Provenzano.

7. Plaintiff has offered documents that suggest that there are alternative methods to conduct the backup tests that do not require the meeting of the 30 minute/ 30 % capacity standard. Plaintiff asserts that at least some of these alternative standards were met in some of the test runs. (Dkt. Entry 20-12 at 5; 20-13 at 1, 7). Defendants assert that it is bound by the 30 minute, 30% capacity standard.

Subsequent to his termination, Plaintiff went to work for Freeland Construction, which did some work on the Hospital campus. Plaintiff asserts that he was terminated from Freeland because of actions by Defendant. Defendant has submitted an affidavit from a Freeland executive stating that the Defendant took no action adverse to Plaintiff and that his separation "was based on Freeland Construction not having enough work for him to do." (Dkt. Entry 17-7 at 2). Further, Plaintiff admitted in his deposition that his work with Freeland ended when his project was finished. (Dkt. Entry 17-2 at 8).[3]

---

[3] Plaintiff submitted an affidavit following his deposition, which at least in part attempted to alter testimony or to provide new claims not previously asserted. (Dkt. Entry 20-1 at 2-7). It is well settled that the submission of an affidavit following a deposition that contradicts deposition testimony should not be considered in addressing an opposing party's motion for summary judgment. *Mack v. United States*, 814 F.2d 120, 124 (2nd Cir. 1987); *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986). The Court has, therefore, disregarded those portions of Plaintiff's subsequently submitted affidavit that contradict his deposition testimony.

## STANDARD OF REVIEW

The Magistrate Judge's Report and Recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is mandated to perform a *de novo* review of those portions of the Magistrate Judge's Report and Recommendation in which specific objection has been made. The Court may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. §636(B).

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News and Observer Publishing Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). In ruling upon a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in the party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## DISCUSSION

### a. The Title VII Claim

The parties agree that Plaintiff's Title VII claim should be evaluated pursuant to the standards set forth in *McDonald Douglas v. Green*, 411 U.S. 792 (1973), which establishes "an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory treatment cases." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Under this standard, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, that he belongs to a

minority group, that he has performed his work at a level which met his employer's reasonable expectations, and he suffered an adverse employment action under circumstances which could indicate race was not treated neutrally. Should the plaintiff satisfy the elements of the *prima facie* case, the defendant then has the burden of producing evidence to "articulate some legitimate nondiscriminatory reason for the employer's rejection." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981). The defendant's burden "is a burden of production, not persuasion." *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142 (2000). Once the defendant satisfies this burden, "the *McDonald Douglas* framework–with its presumptions and burdens–disappears and the sole remaining issue [is] discrimination *vel non. Id.* At 142-43.

The parties to this action vigorously contest the circumstances surrounding Plaintiff's discharge from employment, particularly relating to the conducting of periodic backup tests for the hospital's electrical generators. There is no dispute that the generators are important and that a failure to perform the tests as directed could form a legitimate nondiscriminatory basis for the Defendant to terminate Plaintiff. As summarized in some detail the Background section of this Order, the dispute centers on whether there were circumstances outside of Plaintiff's control which prevented him from meeting the standards for backup testing and that there existed a disparity in treatment among employees that could be related to race. Plaintiff asserts that he was not provided timely data on the test results by his supervisor relating to generator capacity or adequate staff to perform his duties. (Dkt. Entry 17-3 at 34, 36-7' 17-5 at 37, 43; 20-29 at 5). He further asserts that other factors, including the operating room schedules and the demands of many construction contractors working on site, disrupted and/or prevented his periodic testing. (Dkt. Entry 17-3 at 32, 33, 36, 40, 41; 17-4 at 47-48; 17-5 at 37; 20-22 at 2). Plaintiff also contends that when he was on

vacation and since he was terminated the Defendant has had difficulties meeting the testing requirements and no adverse action has been taken against any Caucasian employee responsible for the periodic testing. (Dkt. Entry 20-22 at 2; 20-26 at 2; 39-1 at 57). Defendant, with equal vigor, contests each and every one of the Plaintiff's allegations.

These factual disputes are material both in the initial phase of the *McDonald Douglas* test regarding whether the Plaintiff has met his employer's reasonable expectations and in any consideration of whether the employer's asserted reasons are pretexts for discriminatory action. In light of these numerous, material disputes of fact, summary judgment is not appropriate. Therefore, the Court denies Defendant's motion for summary judgment regarding Plaintiff's Title VII claim.

**B. Interference with Plaintiff's Contractual Relationship with Freeland Construction**

A party seeking to establish a claim for tortuous interference with existing contractual relations must demonstrate the presence of a contract, knowledge of the contract by the tortfeasor, intentional procurement of the contract's breach, absence of justification and damages. *Cooper v. Laboratory Corp. of America Holdings*, 150 F3d 376, 382 (4th Cir. 1998). In this matter, there is no dispute that Plaintiff was employed by Freeland Construction Company following his separation from Defendant and he thereafter lost his position with Freeland. What does appear to be lacking, however, is any genuine dispute of material fact relating to any alleged action by Defendant which produced the termination of the contract. Indeed, the evidence presented fails to show any evidence, taken in a light most favorable to Plaintiff, indicating that Defendant interfered with the employment relationship with Freeman. (Dkt. Entry 17-7 at 2). Further, the undisputed evidence is that Plaintiff's position with Freeland ended when his project was finished. (Dkt. Entry 17-2 at 8). In light of the absence of any genuine dispute of material fact regarding this state law claim, the Court grants

Defendant's motion for summary judgment regarding the intentional interference with contract claim.[4]

## CONCLUSION

Based upon the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment. Specifically, the Court **DENIES** Defendant's motion for summary judgment regarding the Title VII claim and **GRANTS** the Defendant's motion for summary judgment regarding the intentional interference in contract claim. (Dkt. Entry 17)

**AND IT IS SO ORDERED.**

January 31, 2011
Charleston, South Carolina

Richard Mark Gergel
United States District Judge

---

[4] Plaintiff also asserted in his Complaint a breach of contract claim but subsequently withdrew this claim. *See*, Dkt. Entry 20 at 8.